Print Request:    LEXSEE

Time of Request: November 03, 2003   03:17 PM EST

Number of Lines: 1150
Job Number:      706:0:20139184

Client ID/Project Name: IP PACE

Research Information:

LEXSEE 342 F.3d 444

SEND TO:  ROBERTS, MICHAEL
          GRAYDON HEAD & RITCHEY
          511 WALNUT ST
          CINCINNATI, OHIO 45202-3115

  

LEXSEE 342 F.3d 444

**LLOYD MARKS, Plaintiff-Appellant, v. NEWCOURT CREDIT GROUP, Inc. et al., Defendants-Appellees.**

No. 01-1921

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

342 F.3d 444; 2003 U.S. App. LEXIS 18224; 2003 FED App. 0318P (6th Cir.); 31 Employee Benefits Cas. (BNA) 1333

December 10, 2002, Argued

September 4, 2003, Decided

September 4, 2003, Filed

**PRIOR HISTORY:**
  **1  Appeal from the United States District Court for the Eastern District of Michigan at Ann Arbor.  No. 99-60792. Marianne O. Battani, District Judge.

**DISPOSITION:**
Affirmed in part and reversed in part; remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee appealed the order of the United States District Court for the Eastern District of Michigan at Ann Arbor dismissing his claims that defendant benefit plan administrators violated state law and the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq.

**OVERVIEW:** The employee participated in his employer's severance plan in which he would be entitled to substantial benefits if he experienced a qualifying termination by October 1, 1998. The employee filed a claim for these benefits in June 1999, arguing that he had been constructively terminated before the October deadline due to reductions in his duties and compensation unknown to him at the time. The plan administrators denied the employee's claims for benefits. The employee filed claims alleging breach of contract, fraudulent misrepresentation, innocent misrepresentation, fraudulent inducement to purchase stock options, and breach of the plan. The employee's state-law claims as they related to the plan were preempted by ERISA. The employee's equitable estoppel claim and his claims under ERISA §§ 404, 502, and 510, were also dismissed. Judgment was entered against the employee with respect to the denial of benefits, the plan administrator's alleged procedural violations of ERISA § 503, and the fraudulent inducement claim.

**OUTCOME:** The district court's dismissal of the employee's state-law claims not related to the plan was reversed and remanded for further proceedings. The district court's judgment was affirmed on all other grounds.

**CORE TERMS:**
administrator, termination, administrative record, qualifying, estoppel, fraudulent, state-law, preempted, fiduciary, lulling, filed, stock, misrepresentation, summary judgment, terminated, reduction, breach of contract, beneficiary, eligibility, capricious, notice, fair, personal knowledge, state law, administration, quotation, estopped, deadline,



342 F.3d 444, *; 2003 U.S. App. LEXIS 18224, **1;
2003 FED App. 0318P (6th Cir.), ***; 31 Employee Benefits Cas. (BNA) 1333

innocent misrepresentation, employee benefit plan

**LexisNexis(TM) HEADNOTES - Core Concepts**

**Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss**
**Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action**
**Civil Procedure > Jury Trials > Province of Court & Jury**
HN1 The appellate court reviews de novo a district court's dismissal of claims pursuant to Fed. R. Civ. P. 12(b)(6). In deciding whether to grant a Rule 12(b)(6) motion, the district court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations of the plaintiff as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. The appellate court's function is not to weigh the evidence or assess the credibility of witnesses, but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim. The motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption**
HN2 The Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., preempts any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. ERISA § 514(a), 29 U.S.C.S. § 1144(a). In the context of ERISA, the term State law includes all laws, decisions, rules, regulations, or other State action having the effect of law. ERISA § 514(c)(1). To relate to a benefit plan, a law only need have a connection with or reference to such a plan. ERISA's preemption provisions are deliberately expansive. The pre-emption provision is intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption**
HN3 In keeping with the United State Supreme Court's recognition of the broad scope of preemption under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., the United States Court of Appeals for the Sixth Circuit recognizes that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. State-law claims are preempted where their effect on employee benefits plans is merely tenuous, remote or peripheral. A state-law action only peripherally affects a plan where a plaintiff refers to a clause in the benefit plan summary to support his employment discrimination claim, or where a plaintiff simply makes reference to specific, ascertainable damages by citing a life insurance contract. In deciding whether state-law claims are preempted by ERISA, the court focuses on the remedy sought by plaintiffs.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
HN4 See 29 U.S.C.S. § 1104(a).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
HN5 Section 409 of the Employee Retirement Income Security Act, 29 U.S.C.S. §

  

342 F.3d 444, *; 2003 U.S. App. LEXIS 18224, **1;
2003 FED App. 0318P (6th Cir.), ***; 31 Employee Benefits Cas. (BNA) 1333

1001 et seq., explains that a fiduciary who breaches his duty is personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary. 29 U.S.C.S. § 1109 (a).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
**Civil Procedure > Jury Trials > Actions in Equity**
HN6 A plan participant under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., can seek equitable relief against his plan administrator under ERISA § 502(a), 29 U.S.C.S. § 1132(a), if he has been harmed by the administrator's breach of a fiduciary duty. However, a participant cannot seek equitable relief for a breach of fiduciary duty under the catchall provision of ERISA § 502(a)(3), 29 U.S.C.S. § 1132(a)(3), if the alleged violations are adequately remedied under other provisions of ERISA § 502, 29 U.S.C.S. § 1132.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
HN7 Pursuant to § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. This provision of ERISA is aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights. To violate § 510, discrimination must affect the individual's employment relationship in some substantial way.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
HN8 To state a prima facie case under § 510 of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., an employee must show that there was: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. False statements affecting an employee's pension rights do not rise to the level of discrimination found in cases enforcing § 510. Such statements stand in stark contrast to the sort of discrimination found in cases enforcing § 510, which usually involve employers discharging or taking reprisals against employees to prevent them from receiving benefits.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN9 Equitable estoppel may be a viable theory in cases filed under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq. To set forth a claim for equitable estoppel in the ERISA context, a plaintiff must plead five elements: (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

  

342 F.3d 444, *; 2003 U.S. App. LEXIS 18224, **1;
2003 FED App. 0318P (6th Cir.), ***; 31 Employee Benefits Cas. (BNA) 1333

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions**

HN10 A party cannot seek to estop the application of an unambiguous written provision in a plan filed under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. When a party seeks to estop the application of an unambiguous plan provision, he by necessity argues that he reasonably and justifiably relied on a representation that was inconsistent with the clear terms of the plan. Moreover, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

HN11 Section 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., gives a participant or beneficiary the right to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C.S. § 1132(a)(1)(B).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions**

HN12 The appellate court reviews de novo a denial of benefits challenged under § 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. If a plan affords such discretion to an administrator or fiduciary, the appellate court reviews the denial of benefits only to determine if it was arbitrary and capricious, and will uphold his decision if it is rational in light of the plan's provisions.

**Civil Procedure > Summary Judgment > Supporting Papers & Affidavits**

HN13 Pursuant to Fed. R. Civ. P. 56(e), affidavits submitted in support of a motion for summary judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

**Civil Procedure > Appeals > Standards of Review > Abuse of Discretion**
**Evidence > Hearsay Rule & Exceptions**
**Evidence > Procedural Considerations > Rulings on Evidence**

HN14 The appellate court reviews for an abuse of discretion all evidentiary rulings of the district court, including its determination of whether testimony is inadmissible hearsay.

**Labor & Employment Law > Wrongful Termination > Constructive Discharge**

HN15 In order to demonstrate constructive discharge, an employee must show that working conditions were so unpleasant and unreasonable that a reasonable person in the employee's shoes would have felt compelled to resign.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures**

HN16 See 29 U.S.C.S. § 1133.

**Civil Procedure > Appeals > Standards of Review > De Novo Review**
**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**

HN17 The appellate court reviews de novo the question of whether the procedure

  

342 F.3d 444, *; 2003 U.S. App. LEXIS 18224, **1;
2003 FED App. 0318P (6th Cir.), ***; 31 Employee Benefits Cas. (BNA) 1333

employed by the fiduciary in denying the claim meets the requirements of § 503 of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures**
HN18 For the court to consider a plan's claims procedure reasonable, the plan must: (1) establish a procedure for the filing of claims by participants and beneficiaries, provide for a written notification procedure for denial or partial denial of claims, and provide for an appeal procedure for denied or partially denied claims, 29 C.F.R. § 2560.503-1(b)(1)(i); (2) be described in the Summary Plan Description, 29 C.F.R. § 2560.503-1(b)(1)(ii); (3) not contain any provision and not be administered in a way that "unduly inhibits or hampers the initiation or processing of plan claims, 29 C.F.R. § 2560.503-1(b)(1)(iii); and (4) provide for a procedure for informing participants in a timely fashion of the time periods for decisions on claims made and the time periods for making appeals and receiving decisions thereon, 29 C.F.R. § 2560.503-1(b)(1)(iv).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures**
HN19 Plan administrators need only substantially comply with notice requirements under of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. To decide whether there is substantial compliance, courts consider all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances. The question is whether plaintiff was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision to permit effective review.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions**
HN20 The plain language of § 503(1) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., suggests that effectively rejecting a claim for benefits is not sufficient. Rather, administrators must provide written notice setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant. 29 U.S.C.S. § 1133(1).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Civil Procedure > Appeals > Remands & Remittiturs**
HN21 Where administrators have failed to comply with the procedural requirements of § 503 of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., it is ordinarily appropriate to reverse the denial of benefits and to remand the case to the plan administrators or the district court.

**Civil Procedure > Appeals > Reviewability > Preservation for Review**
**Civil Procedure > Appeals > Briefs**
HN22 According to the Fed. R. App. P. 28(a), an appellant's brief must contain a statement of the issues presented for review and an argument on each issue presented. An appellant waives an issue when he fails to present it in his initial briefs before this court.

**COUNSEL:**
ARGUED: Stephen F. Wasinger, WASINGER KICKHAM AND HANLEY, Royal Oak, Michigan, for Appellant.





342 F.3d 444, *; 2003 U.S. App. LEXIS 18224, **1;
2003 FED App. 0318P (6th Cir.), ***; 31 Employee Benefits Cas. (BNA) 1333

Patrick F. Hickey, DYKEMA GOSSETT, Detroit, Michigan, for Appellees.

ON BRIEF: Stephen F. Wasinger, Timothy O. McMahon, WASINGER KICKHAM AND HANLEY, Royal Oak, Michigan, for Appellant.

Patrick F. Hickey, Jeffrey S. Kopp, DYKEMA GOSSETT, Detroit, Michigan, for Appellees.

**JUDGES:**
Before: BATCHELDER and MOORE, Circuit Judges; COLLIER, District Judge. *

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

**OPINIONBY:**
KAREN NELSON MOORE

**OPINION:**

   ***2   *448

   KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Lloyd Marks appeals the district court's dismissal of his state law equitable estoppel claim and his claims that Defendant-Appellee Newcourt Credit Group, Inc., CIT Group, Inc., and Newcourt Financial USA, Inc. (collectively "Newcourt"), violated state law and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 **2 *et seq.* He also appeals the district court's entry of judgment against him with respect to his claims that Newcourt arbitrarily and capriciously denied him benefits, failed to comply with ERISA § 503, and fraudulently induced him to purchase stock options.

   Marks participated in the "AT&T Capital Leadership Severance Plan" ("plan"), under which Marks would be entitled to substantial benefits if he experienced a qualifying termination by October 1, 1998. Marks filed a claim for these benefits in June 1999, arguing that he had been constructively terminated before the October deadline due to reductions in his duties and compensation unknown to him at the time. Newcourt denied Marks's claims for benefits both initially ***3 and on appeal, concluding that he had not experienced a qualifying termination before October 1, 1998.

   Marks filed a claim in state court alleging breach of contract, fraudulent misrepresentation, innocent misrepresentation, fraudulent inducement to purchase stock options, and breach of the plan. Newcourt removed the case to federal district court, where the district judge liberally construed Marks's complaint to state ERISA claims and therefore dismissed **3 the state-law *449 claims as preempted. The district judge also dismissed Marks's equitable estoppel claim and his claims under ERISA §§ 404, 502, and 510, and entered judgment against Marks with respect to the denial of benefits and Newcourt's alleged procedural violations of ERISA § 503. Finally, the district court entered summary judgment for Newcourt as to Marks's claim that Newcourt fraudulently induced him to purchase stock options. Marks timely filed this appeal.

   We REVERSE the district court's dismissal of Marks's state-law claims to the extent that they are not related to the plan, and REMAND for further proceedings on these grounds. We AFFIRM the district court on all other grounds.

  

I. FACTS AND PROCEDURAL HISTORY

Marks was employed by AT&T Capital Corporation ("AT&T Capital") in a senior management position. In this capacity, Marks participated in a severance plan that entitled him to a substantial cash payment if he was terminated without just cause. In the event of a change of control, Marks would also be entitled to benefits if he suffered a "Qualifying Termination" of employment during the following two years:

(i)A termination of a Participant's employment **4  by the Company and its Subsidiaries . . . other than a termination for Cause; or
(ii)A termination of employment by a Participant prior to the second anniversary of the Closing Date for  ***4  one or more of the following reasons: (a) a reduction in base salary; (b) a significant reduction in annual cash target bonus; (c) an elimination or reduction of the Participant's eligibility to participate in the Company's benefit plans or programs that is inconsistent with the eligibility of similarly situated employees . . . to participate therein; (d) a significant reduction in the Participant's duties as they exist immediately after the Closing Date; or (e) an obligation to relocate . . .

Joint Appendix ("J.A.") at 116-17 (Plan).

Newcourt purchased all outstanding shares of AT&T Capital on January 12, 1998. Prior to the acquisition, Newcourt offered Marks continued employment, with duties, responsibilities, authority, and compensation that were substantially identical to his duties and compensation with AT&T Capital. Marks accepted Newcourt's offer, and agreed to purchase 14,665 shares of the company's stock as part of his employment contract. He borrowed $ 453,258 to finance **5  the stock purchase. Marks continued to be employed in a senior management position that was substantially similar to the position he held with AT&T. He was still covered by the plan, but he would have to make a claim by October 1, 1998 to be entitled to benefits for suffering a qualifying termination.

During 1998, Newcourt allegedly began making changes to Marks's business unit. Marks sought and received assurances through and after October 1, 1998, that these modifications were not intended to reduce his duties or his compensation. He continued to be actively employed by Newcourt until February 1999, when he suffered a heart attack and took disability leave.

Marks did not assert any rights under the plan before October 1, 1998. In March 1999, Marks learned that  ***5  Newcourt had awarded him a bonus that was significantly lower than bonuses he typically received from AT&T. According to Marks, Newcourt changed its methods for calculating  *450  performance goals before October 1, 1998, but did not make clear that these changes were intended to and did materially reduce Marks's job responsibilities until May 1999.

Marks first sought to exercise his rights under the plan on June 1, 1999, when **6  his attorney informed Newcourt that Marks was entitled to plan benefits because he had been constructively terminated. Marks's claim alleged that his job responsibilities had changed in 1998 and that Newcourt had misrepresented the nature of these changes. The plan administrators, who are

  

responsible for reviewing all claims for benefits, sent Marks written notification that his claim had been denied. n1 According to the administrators, Marks was not entitled to benefits because the plan required an actual termination before October 1, 1998.

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 The plan requires written notification of the denial of benefits. The notice must include a specific reason for the denial, refer to pertinent plan provisions on which the denial was based, describe any additional material necessary to perfect a participant's claim, and explain why the requirements are necessary.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Marks protested the denial of his claim, arguing that the administrators had imposed a condition -- termination before October 1, 1998 -- on the receipt of **7 benefits that was not contained in the plan. The administrators referred Marks's protest to the benefits committee, which has "sole and complete discretionary authority to determine conclusively for all parties . . . all questions relating to participation of eligible members and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable to any participant, and construction of all terms of the Plan." J.A. at 437 (Plan Summ.). The committee denied Marks's appeal, reasoning that he had no claim because Newcourt had not terminated his employment and because he had not ***6 resigned prior to October 1, 1998. Furthermore, the committee reasoned, Marks had accepted compensation and benefits for several months after October 1998.

Marks filed an action in state court, claiming that Newcourt had fraudulently induced him to become employed by Newcourt, breached his employment agreement, and wrongfully deprived him of benefits under the plan. Marks also alleged that Newcourt engaged in fraudulent conduct that reduced his duties and compensation, while continually assuring him that neither was being reduced. Marks did not raise any claims under **8 ERISA.

Newcourt removed the action to federal district court on grounds that ERISA preempted Marks's state law claims and that there was diversity of citizenship. Marks then filed an amended complaint stating claims for (1) breach of contract and constructive discharge, (2) fraud and silent fraud, (3) innocent misrepresentation, (4) fraudulent inducement of stock purchase and loan agreement; and (5) breach of the AT&T Leadership Plan, breach of contract, and breach of fiduciary duties.

Newcourt moved for an order upholding the administrators' denial of Marks's claim for plan benefits pursuant to Federal Rule of Civil Procedure 52. Newcourt also moved to dismiss three of Marks's common-law claims pursuant to Rule 12(b)(6).

Marks filed a motion to amend his complaint a second time. He wanted to add an estoppel claim and claims under ERISA, alleging violations of §§ 502, 29 U.S.C. § 1132; 503, 29 U.S.C. § 1133; 504, 29 U.S.C. § 1134; 510, 29 U.S.C. § 1140; and 404, 29 U.S.C. § 1104. The magistrate judge denied Marks's motion to amend, but granted his motion to add **9 CIT *451 Group, Inc., as a defendant. The magistrate judge's order said that the first amended complaint should be broadly construed to state claims for the denial of benefits under

  

***7 ERISA. The district court later construed Marks's first amended complaint to include ERISA claims.

Marks filed his opposition to Newcourt's Rule 52 motion for judgment and, in doing so, referred to several alleged ERISA violations that had not been addressed in the complaint or any earlier briefs. At this point, the parties stipulated that Newcourt could voluntarily withdraw its initial Rule 52 motion and file a renewed motion that would address Marks's newly asserted claims and issues.

Marks filed a motion for summary judgment as to his ERISA claims. Newcourt filed a response, and then a renewed motion for entry of judgment. Newcourt sought an affirmance of the denial of benefits under the various provisions of ERISA and moved that all but one of Marks's common-law claims be dismissed as preempted by ERISA.

"For the purposes of Defendant's Revised Rule 52 and 12(b)(6) motions only," J.A. at 888 (Order), Newcourt stipulated to the following:

Each of the following alternate factual statements **10 are possibly true and could possibly be proven if complete discovery on these issues is allowed to proceed:
(1) The Plan Administrators and the Benefits Committee did not consider Plaintiff's claim that Newcourt "lulled" him into not filing a claim by October 1, 1998;
(2) the Plan Administrators and the Benefits Committee considered the "fraudulent lulling" claim based on the administrative record but disregarded it as not being material even if true (e.g., "fraudulent lulling" does not matter) or not being within the scope of their jurisdiction (e.g., "fraudulent lulling" is wrong but no relief is available under the benefit plan); or
(3) The Plan Administrators and the Benefits Committee considered the "fraudulent lulling" claim based on the administrative record but did not ***8 consider it true and thus it did not affect the merits of their decisions.

J.A. at 888-89 (Order).

Before ruling on the motions, however, the district judge accepted Newcourt's designation of the administrative record. Newcourt's former Director of Employee Relations, Kenneth Auletta ("Auletta"), set forth an affidavit swearing to the materials that were available to the benefits committee **11 for review. Over Marks's objection, the district judge concluded that Auletta's affidavit was not hearsay, and was "sufficient to identify the administrative record." J.A. at 1031 (Op.).

The district court granted Newcourt's renewed motion for judgment and denied Marks's motion for summary judgment. The district court also denied Marks's motion for reconsideration or leave to amend his complaint. Finally, the district court granted Newcourt's motion for summary judgment as to Marks's final claim -- fraudulent inducement to purchase Newcourt stock -- and entered final judgment for Newcourt. Marks filed a timely notice of appeal.

II. CLAIMS DISMISSED PURSUANT TO RULE 12(b)(6)

A. Standard of Review

  

HN1 We review de novo a district court's dismissal of claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). In deciding whether to grant a Rule 12(b)(6) motion, we "must construe *452 the complaint in the light most favorable to the plaintiff, accept all factual allegations of the plaintiff as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle **12 him to relief." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). Our function is not to weigh the evidence or assess the credibility of witnesses, *Weiner*, ***9 108 F.3d at 88, but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim, *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994) (quotation omitted).

B. Preemption of State Law Claims

   The district court concluded that Marks's common-law claims for breach of contract, fraud, and innocent misrepresentation were preempted by ERISA, and dismissed them pursuant to Rule 12(b)(6). According to the district court, each cause of action relies "on plaintiff's allegations that defendants deceived him about his job responsibilities and duties, thus inducing him to accept employment with defendants, further inducing him to purchase Newcourt **13 stock, and ultimately lulling him into not exercising his rights under the AT&T plan." J.A. at 1018 (Op.). However, as Marks argues, there is a distinction between alleged lies inducing Marks to accept employment with Newcourt and alleged lies inducing Marks not to file a claim for benefits.

   HN2 ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). In the context of ERISA, "the term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." *Id.* § 514(c)(1). To relate to a benefit plan, a law need only have "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983). ERISA's preemption provisions "are deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); *see Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985) ("The pre-emption provision was intended to displace all state laws **14 that fall within its sphere, even including state laws that are consistent with ERISA's substantive ***10 requirements."). *But see Ky. Ass'n of Health Plans, Inc. v. Miller*, 155 L. Ed. 2d 468,    U.S.   , 123 S. Ct. 1471, 1474 (2003) (noting that state laws regulating insurance, banking, and securities are "saved from pre-emption" by ERISA).

   HN3 In keeping with the Supreme Court's recognition of the broad scope of ERISA preemption, the Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991), *cert. dismissed*, 505 U.S. 1233 (1992). However, we will not conclude that state-law claims are preempted where their "effect on employee benefits plans is merely tenuous, remote or peripheral." *Id.* For example, a state-law action only peripherally affects a plan where a plaintiff refers to a clause in the benefit plan summary to support his employment discrimination claim, or

  

Case 1:01-cv-00301-HJW-JS     Document 49-2     Filed 11/03/2003     Page 12 of 24    11

342 F.3d 444, *452; 2003 U.S. App. LEXIS 18224, **14;
2003 FED App. 0318P (6th Cir.), ***10; 31 Employee Benefits Cas. (BNA) 1333

where a plaintiff simply makes "reference to specific, ascertainable damages" by citing a life **15 insurance contract. *Wright v. Gen. *453 Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001). In deciding whether state-law claims are preempted by ERISA, we have focused on the remedy sought by plaintiffs. *See Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 806 (6th Cir. 1999).

Marks's amended complaint alleges that "Newcourt has wrongfully, arbitrarily and capriciously rejected Marks's notice of termination; and Newcourt has done so solely for selfish reasons, namely, to avoid paying Marks more than $ 1.5 million that he would otherwise be entitled to under the AT&T Plan." J.A. at 48 (Am. Compl. P 38). For each of his state-law causes of action, Marks seeks in damages "an amount presently undetermined but believed to exceed $ 1,500,000." J.A. at 49, 50 (Am. Compl. PP 45, 48, 51). Because he seeks damages equaling the benefits he would have received under the plan, it seems at first glance that his claims relate to an ERISA benefit plan. However, a close reading of Marks's complaint reveals that the reference to ***11 plan benefits was only a way to articulate "specific, ascertainable damages." *Wright*, 262 F.3d at 615. **16

We conclude that the district court erred in finding that Marks's state-law claims were preempted to the extent that the claims alleged would have a "tenuous, remote or peripheral" effect on the plan. *Cromwell*, 944 F.2d at 1276. Marks alleges that, without cause, Newcourt significantly altered his duties and reduced his compensation. Because this conduct may constitute a breach of Marks's employment contract irrespective of the plan, the breach of contract claim is not preempted.

Moreover, Marks's fraud and misrepresentation claims are not entirely preempted, even though they clearly relate to ERISA insofar as they allege that Newcourt's conduct induced Marks "not to exercise his rights under the AT&T Plan until May, 1999." J.A. at 49 (Am. Compl. P 47(d)). To the extent that Marks alleges that fraud or misrepresentation induced him to accept employment as an initial matter, he can state a state-law claim for fraud and/or innocent misrepresentation. Marks alleges that Newcourt's conduct induced him to become employed by Newcourt, to purchase 14,665 shares of Newcourt stock, and to borrow $ 453,258 to finance that purchase. These allegations clearly do not relate **17 to an ERISA plan. Therefore, we remand to the district court for adjudication of those aspects of Marks's fraud and misrepresentation claims not relating to the plan, as well as for adjudication of Marks's breach of contract claim.

C. Dismissal of ERISA Claims

   1. Section 404: Breach of Fiduciary Duty

   The district court dismissed Marks's claim for breach of fiduciary duty, brought pursuant to ERISA § 404, as duplicative of his § 502 claim. Section 404(a)(1) states:   ***12
HN4

A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and --

   (A) for the exclusive purpose of:





342 F.3d 444, *453; 2003 U.S. App. LEXIS 18224, **17;
2003 FED App. 0318P (6th Cir.), ***12; 31 Employee Benefits Cas. (BNA) 1333

   (i)providing benefits to participants and their beneficiaries; and

   (ii)defraying reasonable expenses of administering the plan;

(B)with the care, skill, prudence, and diligence under the circumstances then
prevailing that a prudent man acting in a like capacity and familiar with such
matters would use in the conduct of an enterprise of a like character and with
like aims . . . .


29 U.S.C. § 1104(a). HN5 Section 409 *454 further explains that a
fiduciary who breaches his duty is "personally liable **18 to make good to
such plan any losses to the plan resulting from each such breach, and to restore
to such plan any profits of such fiduciary which have been made through use of
assets of the plan by the fiduciary." 29 U.S.C. § 1109(a).

   HN6 An ERISA plan participant can seek equitable relief against his plan
administrator under § 502(a), 29 U.S.C. § 1132(a), if he has been harmed by the
administrator's breach of a fiduciary duty. *Varity Corp. v. Howe*, 516 U.S. 489,
512, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996). However, a participant cannot
seek equitable relief for a breach of fiduciary duty under the catchall
provision of § 502(a)(3) if the alleged violations are adequately remedied under
other provisions of § 502. *Id.*; *see Wilkins v. Baptist Healthcare Sys., Inc.*,
150 F.3d 609, 615 (6th Cir. 1998) (noting the Supreme Court's clear limitation
of § 502(a)(3) relief to beneficiaries who "may not avail themselves of § 1132's
other remedies").

   In *Wilkins*, we concluded that the plaintiff could not bring a cause of action
for breach of fiduciary duty pursuant to § 502(a)(3) where § 502(a)(1)(B)
**19 provided a remedy for his alleged injury. Section § 502(a)(1)(B)
permitted Wilkins to ***13 bring a lawsuit to challenge the administrator's
denial of benefits. In this case, Marks is permitted to file and has filed a
suit pursuant to the same provision, challenging the Newcourt's administrative
decision to deny him benefits. Therefore, because the district court is correct
that "ERISA § 502(a)(1)(B) provides plaintiff a remedy for the alleged injury,
the denial of benefits, and allows him to bring a lawsuit to challenge the
denial of benefits," J.A. at 1022 (Op.), we affirm the dismissal of Marks's
claim for breach of fiduciary duty. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n2 Even if Marks could bring a breach-of-fiduciary-duty claim, we have
recognized such claims only where the misrepresentation in question involves the
availability or extent of plan benefits. *See James v. Pirelli Armstrong Tire
Corp.*, 305 F.3d 439, 455 (6th Cir. 2002) (considering "materially misleading and
inaccurate information about the plan benefits"); *Krohn v. Huron Mem'l Hosp.*,
173 F.3d 542, 547 (6th Cir. 1999) (describing breaches where administrator
answers questions inaccurately or incompletely, or where administrator
negligently or intentionally misleads plan participants about plan eligibility
or benefits); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405-06 (6th Cir.) (en
banc) (suggesting that breach can occur where employer provides misleading
information about the future of a plan or fails to provide such information when
required to do so), *cert. denied*, 524 U.S. 923, 141 L. Ed. 2d 170, 118 S. Ct.
2312 (1998). In this case, Marks inquired about his duties and compensation, not
about a matter of plan administration. Although Marks argues that his duties and
compensation were a matter of plan administration because his employment status

  

Case 1:01-cv-00301-HJW-JS    Document 49-2    Filed 11/03/2003    Page 14 of 24   13

342 F.3d 444, *454; 2003 U.S. App. LEXIS 18224, **19;
2003 FED App. 0318P (6th Cir.), ***13; 31 Employee Benefits Cas. (BNA) 1333

determined his benefits, we have not recognized this kind of misrepresentation in the context of § 404.

Furthermore, we have only recognized § 404 claims when a plan administrator, or an employer "exercising 'discretionary authority' in connection with the plan's 'management' or 'administration'" misrepresents a material fact. *Sprague*, 133 F.3d at 405 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 502-04, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996)). Marks's employer allegedly misled him about reductions in his duties and compensation. In doing so, Newcourt did not exercise discretion in connection with plan management or administration; Newcourt was discussing Marks's duties as an employee.

Therefore, even if Marks could bring a § 404 claim, he would not prevail. Marks does not allege the necessary kind of misrepresentation or source of that misrepresentation.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -
**20    ***14

2. Section 510: Discrimination

The district court dismissed Marks's claim that Newcourt violated ERISA § 510 , *455 29 U.S.C. § 1140, "by misleading him about the reduction and change in his job duties thereby lulling him into not exercising his rights under the plan." J.A. at 1023 (Op.). Marks argues that Newcourt discriminated against him with the intention of interfering with his attainment of a right to which he might become entitled under the plan. The district court found that such deception did not constitute interference or discrimination within the meaning of § 510.

HN7 Pursuant to § 510, "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." This provision of ERISA is "aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights. **21   " *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980). To violate § 510, discrimination "must affect the individual's employment relationship in some substantial way." *Id.* at 245-46.

HN8 To state a prima facie case under § 510, "an employee must show that there was: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996) ( quotation omitted). Courts have concluded that false statements affecting an employee's pension rights do not rise to the level of discrimination found in cases enforcing § 510. *See, e.g.*, *Swanson v. U.A. Local 13 Pension Plan*, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) (failing to advise employee of the consequences of retirement was not the kind of direct interference required to establish liability under § 510), *aff'd*, ***15 953 F.2d 636 (2d Cir. Dec. 19, 1991); *Goins v. Teamsters Local 639*, 598 F. Supp. 1151, 1154-55 (D.D.C. 1984) (making false statements about pension rights does not rise to the level of **22 a § 510 violation where administrator's remarks at most "lulled" employee into erroneously believing that certain requirements did not apply). Such "statements

  

stand in stark contrast to the sort of discrimination found in cases enforcing
§ 510, which usually involve employers discharging or taking reprisals against
employees to prevent them from receiving benefits." *Swanson*, 779 F. Supp. at 703
(quotation omitted).

Marks alleges that Newcourt disguised the significance of changes made to the
terms and conditions of his employment and fraudulently concealed its true
reasons for making the changes. The District Court for the Southern District of
New York has considered whether an employee can state a claim under § 510 based
on allegations that the employee was misled about the nature of his duties and
responsibilities: "On the facts presented, the most the employee can allege is
that she was misled about her duties and responsibilities. This allegation does
not give rise to a claim for 'interference' or 'discrimination' under § 510."
*Donnelly v. Bank of N.Y. Co.*, 801 F. Supp. 1247, 1255 (S.D.N.Y. 1992), *aff'd*,
**23 2 F.3d 403 (2d Cir. July 2, 1993). This is precisely what Marks alleges
in this case. Thus, construing Marks's complaint in the light most favorable to
him, we conclude that Marks failed to state a prima facie case under § 510.
Because he fails to allege conduct that would fall within the scope of § 510's
prohibitions, we affirm the district court's decision to dismiss this claim.
*456

### 3. Equitable Estoppel

Marks argues that because Newcourt fraudulently represented to him that his
job duties had not been reduced throughout 1998, and therefore lulled him into
not exercising his rights under the plan, Newcourt should be estopped from
relying on the plan's October 1, 1998, deadline. The district ***16 court
concluded that Marks could not prevail on an estoppel theory as a matter of law,
because estoppel would "contravene the terms of the plan documents," which
"unambiguously require that plaintiff have experienced a qualifying termination
prior to October 1, 1998." J.A. at 1024 (Op.).

This court has recognized that HN9 "equitable estoppel may be a viable
theory in ERISA cases." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th
Cir.) (en banc), *cert. denied*, 524 U.S. 923, 141 L. Ed. 2d 170, 118 S. Ct. 2312
(1998). **24 To set forth a claim for equitable estoppel in the ERISA
context, a plaintiff must plead five elements:

(1)There must be conduct or language amounting to a representation of material
fact; (2) the party to be estopped must be aware of the true facts; (3) the
party to be estopped must intend that the representation be acted on, or the
party asserting the estoppel must reasonably believe that the party to be
estopped so intends; (4) the party asserting the estoppel must be unaware of the
true facts; and (5) the party asserting the estoppel must reasonably or
justifiably rely on the representation to his detriment.

*Id.* Liberally construed, Marks's complaint alleges each of the five required
elements.

HN10 A party cannot seek to estop the application of an unambiguous written
provision in an ERISA plan, however. *Id.* at 404. When a party seeks to estop the
application of an unambiguous plan provision, he by necessity argues that he
reasonably and justifiably relied on a representation that was inconsistent with
the clear terms of the plan. *Id.* Moreover, "to allow estoppel to override the

  

clear terms of plan documents would be to enforce something **25 other than
the plan documents themselves." *Id.* In this case, the plan provision requiring
that a participant assert his rights by October 1, 1998, is unambiguous.
Therefore Marks cannot rely on an ***17 estoppel theory, and the district
court did not err in dismissing the argument.

   III. JUDGMENT AGAINST MARKS

A. ERISA § 502: Challenging the Denial of Plan Benefits

   The district court concluded that Marks's claim for breach of the plan was
actually a claim challenging the denial of benefits brought pursuant to ERISA §
502. HN11 Section 502(a)(1)(B) gives a participant or beneficiary the right to
bring a civil action "to recover benefits due to him under the terms of his
plan, to enforce his rights under the terms of the plan, or to clarify his
rights to future benefits under the terms of the plan." 29 U.S.C. §
1132(a)(1)(B).

   1. Standard of Review

   HN12 We review de novo a denial of benefits challenged under § 502(a)(1)(B)
, "unless the benefit plan gives the administrator or fiduciary discretionary
authority to determine eligibility for benefits or to construe the terms of the
plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d
80, 109 S. Ct. 948 (1989). **26 If a plan affords such discretion to an
administrator or fiduciary, we review the denial of benefits only to determine
if it was "arbitrary and capricious," *Miller v. Metropolitan Life Insurance Co.*,
925 F.2d 979, 983 (6th Cir. 1991), and will uphold his decision *457 if it
is "rational in light of the plan's provisions," *Borda v. Hardy, Lewis, Pollard
& Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation omitted).

   The plan at issue grants its administrators discretion over determining
eligibility for benefits. Section 19, *"Administration,"* states that "the Plan
Administrator shall make the rules and regulations necessary to administer the
Plan and shall have the responsibility and discretionary authority to interpret
the terms of the Plan, determine eligibility for benefits and to determine the
amounts of such ***18 benefits." J.A. at 131 (Plan § 19). Therefore, we
apply the deferential "arbitrary and capricious" standard in reviewing the
decisions of the administrators and the benefits committee to deny Marks
benefits. We should also take into account, however, the fact that Newcourt is
acting under a conflict of interest because it **27 both funds and
administers the plan. *See Bruch*, 489 U.S. at 115 (noting that courts should be
attentive to conflicts in this context); *Univ. Hosps. of Cleveland v. Emerson
Elec. Co.*, 202 F.3d 839, 847 n.4. (6th Cir. 2000) (recognizing a potential for
self-interested decisionmaking "where, as here, the plan sponsor bears all or
most of the risk of paying claims, and also appoints the body designated as the
final arbiter of such claims").

   2. Administrative Record Considered on Review

   The scope of the district court's and this court's review of the denial of
benefits is limited to the administrative record available to the plan
administrators when the final decision was made. *Miller*, 925 F.2d at 986.
Although Newcourt did not identify the administrative record before the
magistrate judge, it subsequently presented to the district court what it
"asserts is the complete administrative record containing all documents reviewed

  

by the benefits committee." J.A. at 1031 (Op.). Marks argues that the district court erred by relying on Auletta's affidavit to identify the administrative record because Auletta was not a member of the benefits committee.  **28

HN13 Pursuant to Federal Rule of Civil Procedure 56, affidavits submitted in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). HN14 We review for an abuse of discretion "all evidentiary rulings of the district court, including its determination of whether testimony is inadmissible hearsay." *United States v. Khalil*, 279 F.3d 358, 363 (6th Cir. 2002). Auletta's affidavit claims his " personal knowledge of the facts contained in this affidavit" and  ***19 explains that the documents attached "were the materials reviewed by the Benefits Committee in reviewing Plaintiff's appeal of the Plan Administrators' denial of Plaintiff's claim." J.A. at 213, 214 (Auletta Aff.). Auletta was not a plan administrator or a member of the benefits committee, so he did not have personal knowledge of the documents *actually* considered by the committee. However, Auletta could have personal knowledge of what materials were available to the committee when it decided to deny benefits.  **29  Marks does not contest that Auletta, as the then-Director of Employee Relations, was responsible for assembling materials presented to the administrators and the committee for review. Therefore, because Auletta would have personal knowledge of the administrative record available to the plan administrators at the time of their final decision, we find that the district court did not abuse its  *458 discretion by relying on Auletta's affidavit to determine the administrative record.

The district court did clearly err, however, in relying on Auletta's affidavit to designate a piece of electronic mail sent from Rob McFarlane to Auletta on August 30, 1999, as part of the administrative record. The benefits committee notified Marks that it had denied his appeal on August 27, 1999. Clearly McFarlane's electronic mail could not have been available to the administrators when they made their final decision to deny Marks's claim. Therefore, this document should not be considered part of the administrative record. In reviewing Marks's § 502 claim, we will consider the administrative record designated by the district court, with the exception of this electronic mail. n3

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n3 Marks also argues that the district court should have included Marks's own affidavit, created in March 2000, as part of the administrative record. Appellant's Br. at 18 n.7. Because Newcourt can identify the administrative record, however, this argument is without force. A district court can only consider new non-record evidence "when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998). Marks alleges no such procedural error.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - - -
**30   ***20

3. Arbitrary and Capricious Denial of Benefits

  

Marks alleges that Newcourt's denial of benefits was arbitrary and capricious because the administrators impermissibly added a new term to the plan by refusing to treat Marks's alleged constructive termination before October 1, 1998, as a qualifying termination. According to Marks, the plan was ambiguous as to whether constructive termination before October 1, 1998, constitutes a qualifying termination. Therefore, Marks argues that we should resolve any ambiguity against the drafter of the provision -- Newcourt. *See Univ. Hosps.*, 202 F.3d at 847.

In their initial denial of Marks's claim for benefits, the plan administrators explained that Marks's actual termination was a condition precedent to establishing a qualifying termination under the plan. The plan recognizes two kinds of qualifying terminations: (1) termination by the company without cause, and (2) termination by the employee because, among other reasons, the company significantly reduced the employee's duties. With respect to Marks's claim of termination by the company, the administrators interpreted the language of the plan to require actual,  **31  not constructive, termination, and found that "to date, no such termination of Marks's employment by the Company has occurred and more than two years have passed since the Closing Date." J.A. at 144 (Admin. Decision). Then, the administrators determined that they could not evaluate Marks's claim that he terminated his own employment because the company reduced his duties until Marks provided written notice of his termination of employment with the company.

The benefits committee offered a similar explanation for its denial of Marks's claims. After defining and establishing the deadline for a "qualifying termination," the committee  ***21  concluded that Marks had not suffered a qualifying termination because "the Company had not terminated his employment 'prior to the second anniversary of the Closing Date,' which is October 1, 1998." J.A. at 211 (Benefits Comm. Decision). Marks was employed by the company until June 1999, and continued to accept compensation and benefits from the company for months after October *459  1, 1998. Like the administrators, the committee found that the plan addresses only actual, not constructive, termination, and concluded that Marks would have had **32  to resign before October 1, 1998, to establish a benefits claim on grounds that he terminated his employment due to a reduction in duties.

The plan administrators' and benefits committee's decisions to deny Marks benefits in light of their interpretations of "qualifying termination" under the plan provisions was not arbitrary or capricious. The administrators made the reasonable determination that the provision in question in fact was not ambiguous. They concluded that the plan clearly required either resignation or actual termination of employment prior to October 1, 1998. n4 Because Marks continued to be actually employed by the company until June 1999, we can only conclude that the administrators and benefits committee offered a reasoned explanation for the denial of benefits. *Davis*, 887 F.2d 689 at 693. We affirm the denial of benefits because the administrators' decision is rational in light of the plan provisions, and therefore was not arbitrary and capricious. *Borda*, 138 F.3d at 1066.

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - - -

n4 At any rate, Marks could not demonstrate that he was constructively discharged: HN15 "In order to demonstrate constructive discharge, an employee must show that working conditions were so unpleasant and unreasonable that a

  

reasonable person in the employee's shoes would have felt compelled to resign."
*Welsch v. Empire Plastics, Inc.*, 2000 U.S. App. LEXIS 11792, No. 99-3420, 2000
WL 687678, ** 4 (6th Cir. May 19, 2000) (citing *Wilson v. Firestone Tire &
Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991)). Marks neither claims that he
felt compelled to resign before October 1, 1998, nor alleges that his working
conditions were unpleasant.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
**33    ***22

  B. ERISA § 503: Procedural Requirements

  Appellant argues that he did not receive the procedural protections
established by ERISA § 503. Pursuant to § 503,

  HN16 Every employee benefit plan shall --


(1) provide adequate notice in writing to any participant or beneficiary whose
claim for benefits under the plan has been denied, setting forth the specific
reasons for such denial, written in a manner calculated to be understood by the
participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits
has been denied for a full and fair review by the appropriate named fiduciary of
the decision for denying the claim.


29 U.S.C. § 1133.

  HN17 We review de novo "the question of whether the procedure employed by
the fiduciary in denying the claim meets the requirements of Section 503."
*Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 806 (6th Cir. 1996).
HN18 For this court to consider a plan's claims procedure reasonable, the plan
must:


(1) establish a procedure for the filing of claims by participants and
beneficiaries, provide for a written notification procedure for denial or **34
partial denial of claims, and provide for an appeal procedure for denied or
partially denied claims, see 29 C.F.R. § 2560.503-1(b)(1)(i); (2) be described
in the Summary Plan Description, see id. § 2560.503-1(b)(1)(ii); (3) not contain
any provision and not be administered in a way that "unduly inhibits or hampers
the initiation or processing of plan claims," id. § 2560.503-1(b)(1)(iii); and
(4) provide for a procedure for informing participants in a timely fashion of
the time *460 periods for decisions on claims ***23 made and the time
periods for making appeals and receiving decisions thereon, see id. §
2560.503-1(b)(1)(iv).


*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 413-14 n.2 (6th Cir. 1998).

  Because Newcourt's plan ostensibly complies with these procedural
requirements, we must consider whether Newcourt complied with these procedures
when evaluating Marks's claim. We have adopted the rule that HN19 plan
administrators need only substantially comply with ERISA notice requirements.
*Kent*, 96 F.3d at 807-08. To decide whether there is substantial compliance,

  

courts consider all communications **35 between an administrator and plan
participant to determine whether the information provided was sufficient under
the circumstances. *See, e.g., White v. Aetna Life Ins. Co.*, 341 U.S. App. D.C.
155, 210 F.3d 412, 414 (D.C. Cir. 2000); *Brehmer v. Inland Steel Indus. Pension
Plan*, 114 F.3d 656, 662 (7th Cir. 1997) ("The question is whether plaintiff
was supplied with a statement of reasons that under the circumstances of the
case permitted a sufficiently clear understanding of the administrator's
decision to permit effective review."). In this analysis, it is crucial for us
to determine whether the plan administrators fulfilled the essential purpose of
§ 503 -- notifying Marks of their reasons for denying his claims and affording
him a fair opportunity for review. *Kent*, 96 F.3d at 807.

1. Explaining the Denial of a Claim

The plan administrators and benefits committee both sent Marks letters
clearly explaining the denial of benefits, but neither expressly provided
reasons for denying each of Marks's two claims for benefits: (1) his termination
claim; and (2) his estoppel claim. Marks alleges that the administrators failed
to comply **36 with § 503(1) because they did not explain the denial of
Marks's "lulling claim." As the district court noted, the administrators and the
benefits ***24 committee did effectively reject the lulling claim in that
"the determination that plaintiff did not suffer a termination necessarily
encompasses a rejection of plaintiff's lulling claim, the gravamen of which was
that plaintiff did suffer a termination." J.A. at 1036 (Op.).
However, HN20 the plain language of § 503(1) suggests that "effectively
rejecting" a claim for benefits is not sufficient. Rather, administrators must
provide written notice "setting forth the specific reasons for such denial,
written in a manner calculated to be understood by the participant." 29 U.S.C. §
1133(1). Neither the administrators nor the benefits committee set forth
specific reasons for rejecting Marks's estoppel, or "lulling," theory.

We conclude that, in light of the purpose of § 503, Newcourt substantially
complied with ERISA's procedural requirements. Neither Marks's initial demand
for benefits nor his appeal to the benefits committee clearly expressed that his
claims of termination and estoppel were distinct and required **37
independent analysis. Marks alleged that Newcourt lulled him into a false sense
of security, and suggested that Newcourt should be estopped from asserting the
October deadline. However, the strongest indication of an estoppel argument
appears in a footnote to his statement that he is providing notice of a
qualifying termination and demanding benefits. Given that the administrators and
benefits committee both found that no qualifying termination occurred, they did
not deny Marks full and fair review by failing specifically to address Marks's
estoppel theory. Even if Marks had received an explanation for the denial of
his estoppel theory and successfully appealed that determination, the estoppel
theory alone would not *461 entitle him to relief absent a finding of
qualifying termination. Because neither the administrators nor the benefits
committee found a qualifying termination, we conclude that their failure to
explain the rejection of the estoppel theory did not deprive Marks of his
opportunity for fair review before the benefits committee or the district court.
***25

HN21 Where administrators have failed to comply with the procedural
requirements of § 503, it is ordinarily appropriate **38 to reverse the
denial of benefits and to remand the case to the plan administrators or the
district court. *See VanderKlok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610,
619 (6th Cir. 1992). However, because we conclude that Newcourt substantially

  

Case 1:01-cv-00301-HJW-JS    Document 49-2    Filed 11/03/2003    Page 21 of 24   20

342 F.3d 444, *461; 2003 U.S. App. LEXIS 18224, **38;
2003 FED App. 0318P (6th Cir.), ***25; 31 Employee Benefits Cas. (BNA) 1333

complied with § 503, we affirm the district court's entry of judgment for
Newcourt on this claim.

2. Additional Evidence

Marks also claims the procedural requirements were not met because the plan
administrators failed to advise him of any additional evidence that would be
required to make a reasoned decision. It is true that the administrators only
informed Marks generally that he could submit additional evidence and did not
request specific additional evidence. But this does not indicate any deficiency
because, in light of the administrators' and committee's explanations for
denying benefits, nothing short of evidence that Marks had been actually
terminated before October 1, 1998, would have changed their decisions.
Therefore, the district court did not err in concluding that the administrators
substantially complied with the procedural requirements of § 503(1) in this
respect.

3. Full and Fair Review

Finally, Marks **39  argues that the administrators did not afford him an
opportunity for full and fair review in accord with § 503(2). The Seventh
Circuit has said that "the persistent core requirements of review intended to be
full and fair include knowing what evidence the decision-maker relied upon,
having an opportunity to address the accuracy and reliability of that evidence,
and having the decision-maker consider the evidence presented by both parties
prior to reaching and rendering his decision." *Halpin v. W.W. Grainger, Inc.*,
962 F.2d 685, 689 (7th Cir. 1992) (quotation omitted). Marks argues that, even
if we know what evidence  ***26  was before the benefits committee, there is
no evidence that the plan administrators actually considered any of the evidence
submitted when making their decision.

It is true that neither the administrators' nor the benefits committee's
decision specifically lists every piece of evidence considered, but no law
requires them to do so. Marks cites as support for his claim cases in which
administrators failed to offer any reason for their decisions to deny benefits.
*See, e.g., VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 616
(6th Cir. 1992). **40  But, in this case, the administrators and benefits
committee did offer a reason for their denial, citing plan provisions and the
fact that Marks did not experience a qualifying termination before the October
31, 1998, deadline. Because Marks neither points to evidence indicating that
the administrators did not consider the evidence before them, nor has a claim on
the basis of the administrators' failure to offer reasoned explanations for
their decisions, we affirm the district court's dismissal of Marks's § 503(2)
claim.

IV. SUMMARY JUDGMENT AS TO FRAUDULENT INDUCEMENT CLAIMS

We need not review the district court's grant of summary judgment  *462  on
Marks's claim that Newcourt fraudulently induced him to buy stock options
because Marks did not raise it before this court. HN22 According to the
Federal Rules of Appellate Procedure, an "appellant's brief must contain . . . a
statement of the issues presented for review" and an argument on each issue
presented. Fed. R. App. P. 28(a); *see Bickel v. Korean Airlines Co.*, 96 F.3d
151, 153 (6th Cir. 1996), *cert. denied*, 519 U.S. 1093, 136 L. Ed. 2d 716, 117 S.
Ct. 770 (1997). An appellant waives an issue when he fails **41  to present it
in his initial briefs before this court. *Thaddeus-X v. Blatter*, 175 F.3d 378,

  

342 F.3d 444, *462; 2003 U.S. App. LEXIS 18224, **41;

2003 FED App. 0318P (6th Cir.), ***26; 31 Employee Benefits Cas. (BNA) 1333

403 n.18 (6th Cir. 1999) (en banc); *Bickel*, 96 F.3d at 153-54. The only reference to Marks's fraudulent inducement claim is in the last sentence of his brief addressed to this court, which requests that we "reverse the dismissal of Counts I-V." Appellant's Br. at 42. ***27 Marks does not acknowledge that judgment was entered for Newcourt on the fraudulent inducement claim, mention the claim in his statement of issues, or make any arguments pertaining to the claim in his brief. Therefore, Marks waived consideration of this issue on appeal, and we need not consider the district court's grant of summary judgment as to Count IV.

V. CONCLUSION

For the reasons stated above, we REVERSE the district court's dismissal of Marks's state-law claims to the extent that they are not related to the plan, and we REMAND for further proceedings in the district court Marks's state-law breach of contract claim and, insofar as Marks alleges that Newcourt induced Marks to accept employment by deceiving him about his duties, his state-law claim for fraud and misrepresentation. **42 Although the district court erred by including McFarlane's electronic mail in the administrative record, we AFFIRM the district court's judgment on all other grounds.



********** Print Completed **********

Time of Request:    November 03, 2003  03:17 PM EST

Print Number:       706:0:20139184
Number of Lines:    1150
Number of Pages:    21

SEND TO:  ROBERTS, MICHAEL
          GRAYDON HEAD & RITCHEY
          511 WALNUT ST
          CINCINNATI, OHIO 45202-3115

  

