KENNETH J. MURPHY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

02 MAY 20 PM 1:29

| | |
|---|---|
| Elmer Campbell, | ) |
| Plaintiff, | ) Case No. C-1-02-88 |
| vs. | ) |
| International Paper, | ) |
| Defendant. | ) |

Memorandum and Order

Plaintiff alleges that Defendant International Paper violated §510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1140, by failing to pay him certain severance and other benefits under an Effects Bargaining Agreement (the "Agreement") between International Paper and Plaintiff's local union. International Paper contends that Plaintiff has not stated a claim under ERISA, whether or not the Agreement represents an employee welfare benefit plan (a "Plan"). On that basis, International Paper moves for the dismissal of Plaintiff's claim pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure.

1. **Background**

Plaintiff had worked for International Paper at its Hamilton B Street Facility for over 35 years at the time of the closing of that facility on February 9, 2001. In anticipation of the closing, the union representing Plaintiff negotiated the Agreement with International Paper. The Agreement provides, in pertinent part, as follows:

7

> Employees who do not receive an employment offer from SMART Papers would [sic] be paid 60 hours pay at the rate of their current permanent classification on the date of sale for each full and pro rata year of continuous service with International Paper.
>
> Employees who do receive an employment offer from SMART Papers will not be entitled to severance pay unless they are terminated from SMART Papers, through no fault of their own, within eighteen (18) months of the sale date.
>
> \* \* \*
>
> Employees who have met the age and service requirements for retiree life insurance as of the date of sale will retain their eligibility for the death benefit from the International Paper Plan whenever they elect to retire.
>
> \* \* \*
>
> Employees who have met the age and service requirements for Retiree Medical Coverage as of the date of sale will retain their eligibility for Retiree Medical Benefits from the International Paper Plan whenever they elect to retire.
>
> State and local agencies will be utilized to identify employment opportunities for interested employees. Assistance with resume preparation will be provided.
>
> The Company will continue to provide employee assistance support for three (3) full months following the date of sale. The Company will provide financial group counseling sessions by a certified financial planner.

Smart Papers offered Plaintiff employment, which he accepted. After working for SMART Papers for less than 18 months, Plaintiff terminated his employment because he was "unable to perform the essential functions of his position." Complaint, ¶16. He now sues for the benefits to which he claims he is entitled under the Agreement.

International Paper contends that Plaintiff has failed to state a claim under ERISA, inasmuch as the Agreement does not represent or constitute a Plan. It also argues that, if the

2

Agreement does represent a Plan, International Paper did not violate ERISA by failing to provide Plaintiff any benefits under the Agreement. On those grounds, Defendant asks the Court to dismiss Plaintiff's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2. <u>The Rule 12(b)(6) Standard</u>

The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true. See <u>Mayer v. Mylod</u>, 988 F.2d 635, 638 (6th Cir. 1993)(citing <u>Nishiyama v. Dickson County</u>, 814 F.2d 277, 279 (6th Cir. 1987)). To that end, for purposes of a motion to dismiss under the Rule, the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. See <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974); <u>Miller v. Currie</u>, 50 F.3d 373, 377 (6th Cir. 1995). To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988)(citations and internal quotation marks omitted). The test for dismissal under Rule 12(b)(6), however, is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Hartford Fire Insurance Co. v. California</u>, 509 U.S. 764, 811 (1993)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). See also <u>Monette v. Electronic Data Systems Corp.</u>, 90 F.3d 1173, 1189 (6th Cir. 1996). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless no law supports the claim made, the facts alleged are insufficient to state a claim, or an insurmountable bar appears on the face of the complaint.

3

3. Analysis

The seminal case for the identification of Plans in the context of arrangements that are not ostensibly Plans is Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982)(en banc). The Sixth Circuit has explicitly adopted the Dillingham standard. See Williams v. WCI Steel Co., 170 F.3d 598, 602-03 n.3 (6th Cir. 1999). That standard establishes the existence of a Plan when a reasonable person can ascertain (1) the intended benefits; (2) the class of beneficiaries; (3) the source of financing; and (4) the procedures for receiving benefits. See Dillingham, 688 F.2d at 1373.

In this case, the parties do not disagree concerning the first three elements of the Dillingham standard. The intended benefits are those provided under the Agreements. The intended class of beneficiaries is also identified. The source of funding is also ascertainable. The fourth element of the standard is the subject of the parties' disagreement.

While Dillingham speaks of the procedures for receiving benefits, other courts have explained that the issue surrounding the fourth element is whether the arrangement "requires an ongoing administrative program to meet the employer's obligation." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987). The First Circuit Court of Appeals explained that, in order to qualify as a Plan, the arrangement "must require the exercise of discretion to the degree that would justify saddling an employer with fiduciary responsibility and foreclosing an employee's state claims." O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 271 (1st Cir. 2001). Where the employer is required to exercise a only minimal quantum of discretion, the "ongoing administrative program" identified in Fort Halifax Packing, supra, is not present. See Rodowicz v. Massachusetts Mut. Life Ins. Co., 192 F.3d 162, 172 (1st Cir. 1999). See also

4

Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 258 (8th Cir. 1994)(where the employer's task is purely mechanical, no ongoing administrative program exists).

The exercise of discretion by International Paper is strikingly similar to that required of the employer in Kulinski, supra, upon which Defendant relies. In that case, the employee covered by the subject agreement enjoyed "the unfettered discretion to decide whether" he had left his employment for "good reason" and was, thus, eligible for a severance payment. See Kulinski, 21 F.3d at 258. After the employee made that determination, the employer's responsibility was simply to make the payment. In the case of the Agreement, International Paper exercises no discretion. Eligibility is automatic if SMART Papers does not offer employment or if SMART Papers terminates employment within 18 months through no fault of the employee. The decisive actions are those of SMART Papers, not International Paper. No, or very minimal, administrative scheme is required, therefore, to determine eligibility. See Sherrod v. General Motors Corp., 33 F.3d 636, 638 (6th Cir. 1994)("an employer's need to create an administrative scheme may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria").

Moreover, the benefits to which an employee is entitled are determined by mechanical application of formulae that consider years of service and age. The exercise of discretion is negligible. Once eligibility is determined, payments are made according to the formulae. Such an arrangement does not warrant the imposition of fiduciary responsibility under ERISA. See O'Connor, 251 F.3d at 271. It requires the creation of no new administrative scheme because employees simply retain the benefits to which they are entitled under existing Plans. See Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1539 (3rd Cir. 1992). The Court

5

concludes that the Agreement does not represent or constitute a Plan and that, accordingly, Plaintiff has not stated a claim under ERISA for a failure to pay benefits under a Plan.

Even were the Court to determine that the Agreement represents a Plan, however, Plaintiff has not stated a claim under 29 U.S.C. §1140 upon which relief may be granted. If the Agreement represents a Plan governed by ERISA, as Plaintiff alleges, federal common law rules of contract interpretation determine Plaintiff's rights under the Agreement. See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998). Those rules dictate that the Court interpret the Agreement's provisions according to their plain meaning, in an ordinary and popular sense. See id. (citing Regents of the Univ. of Michigan v. Agency Rent-A-Car, 122 F.3d 336, 339 (6th Cir. 1997)). In applying this plain meaning analysis, the Court "must give effect to the unambiguous terms of an ERISA plan." Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996).

The provision of the Agreement at issue is that guaranteeing severance benefits to "[e]mployees who do receive an employment offer from SMART Papers" who "are terminated from SMART Papers, through no fault of their own...." Plaintiff does not allege that SMART Papers terminated his employment. Rather, he acknowledges that he left SMART Papers' employ because he could not perform the essential functions of his job there.

The verb phrase "are terminated" is in the passive voice. Accordingly, its plain meaning is that the termination happened to the employee and not that the employee terminated something. Plaintiff concedes as much but alleges that he was "constructively terminated" because he could not perform the essential functions of his job. His argument, in a nutshell, is that he was the subject of a constructive termination effectuated by SMART Papers. In that

6

sense, he was the object of the termination and the termination conforms to the passive voice language of the Agreement.

To state a claim of constructive discharge in this circuit, an employee must allege conditions so intolerable that a reasonable person would have perceived no alternative to resignation. See Jacobs v. Martin Sweets Co., Inc. 550 F.2d 364 (6th Cir.), cert. denied, 431 U.S. 917 (1977). Plaintiff's constructive discharge claim, to withstand a motion under Rule 12(b)(6), must, therefore, be based upon allegations of conditions, imposed upon him by SMART Papers, which, viewed objectively, were so burdensome that a reasonable person would have found them intolerable. See Murray v. Sears, Roebuck & Co., 722 F. Supp. 1500, 1507 (N.D. Ohio 1989). An employee's own "subjective inability to perform the job certainly does not support a constructive discharge claim." Id. at 1506.

Plaintiff has not alleged any actions or conditions imposed by SMART Papers that caused him to feel compelled to terminate his employment. Rather, he alleges that he believed he was unable to perform the essential functions of his job. He does not allege that his working conditions were harsher than, or otherwise different from, those of his coworkers. See Murray, 722 F. Supp. at 1506. He simply alleges that he could not do the job. That alleged inability, without an additional allegation that SMART Papers assigned him the position in order to cause him to resign, is not a characteristic of the working conditions imposed by SMART Papers. See id. It does not, therefore, state a claim of constructive discharge.

Plaintiff has not alleged facts that, if proved, would support a finding that he was constructively discharged by SMART Papers. He has not, therefore, alleged that he was terminated from his employment by SMART Papers. Because he has not alleged that he was terminated, he has not stated a claim that International Papers violated rights guaranteed by the

Agreement and, thus, incurred liability under 29 U.S.C. §1140. His claim fails, therefore, even if the Agreement represents a Plan governed by ERISA.

4. <u>Conclusion</u>

For those reasons, Defendant's motion to dismiss (Doc. 3) is hereby **GRANTED**. This action is **CLOSED**.

**IT IS SO ORDERED.**

_____
Sandra S. Beckwith
United States District Judge