**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Western Division**

| | | |
|---|---|---|
| **PACE LOCAL UNION 5-1967, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. C-1-01 301** |
| | ) | |
| **INTERNATIONAL PAPER COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**INTERNATIONAL PAPER COMPANY'S RESPONSE TO PLAINTIFFS' OBJECTIONS
TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

Defendant International Paper Company ("International Paper") responds as follows to the Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation ("R&R") entered on December 30, 2003.  International Paper offers this Response pursuant to Rule 72(b) of the Federal Rules of Civil Procedure.

**I.      STATEMENT OF THE CASE**

The R & R, dated December 30, 2003, recommends that International Paper's Motion for Summary Judgment be granted in its entirety, and that Plaintiffs' claims under Section 301 of the Labor Management Relations Act ("LMRA") and ERISA be dismissed with prejudice.  Plaintiffs filed their Objections to the R & R on January 15, 2004, generally on the grounds that Plaintiffs theory of estoppel should be credited under both the LMRA and ERISA. (Objections, p. 15). Plaintiffs' objections are little more than a rehash of the theories stated in their Complaint and repeated in their Response to International Paper's Motion for Summary Judgment.  They have still failed to show admissible evidence or applicable case law to support their theories and withstand Summary Judgment. The Magistrate's recommendations are well founded and

Plaintiffs' objections should be dismissed.  Plaintiffs' specific Objections, and International

Paper' responses to the same, are addressed in detail below.

## II.    INTERNATIONAL PAPER'S RESPONSES TO PLAINTIFFS' OBJECTIONS

A.    <u>Plaintiffs' Objection Nos. 1, 2 And 3:  Plaintiffs Object To The Magistrate's Statement That Plaintiffs' Assertions Regarding A "Secret Number" For Preferred Employees Was Inaccurate And Unsupported By The Evidence</u>

Plaintiffs' first three objections relate to Plaintiffs' claim that International Paper is

estopped from relying on the literal terms of the EBA.  Plaintiffs contend that International Paper

developed a scheme so that SMART would not offer employment to certain "preferred"

employees who used a "secret" telephone number to communicate to SMART that they did not

want jobs offers.  However, there is simply no competent evidence on which a trier of fact could

conclude that there was any such scheme.  Plaintiffs presented no evidence of any conspiratorial

agreement between SMART and International Paper, no limitation on methods for employees to

communicate to SMART that they did not want a job offer, and no understanding with SMART

to limit its job offers or deny offers to employees who did not want them.  SMART, not

International Paper, was solely responsible for hiring its workforce and establishing its hiring

criteria.  (R&R, 13; Weissman Dep. 28, 47).

Plaintiffs base their estoppel theory on the alleged statements of Annetta Johnson and

Hocutt Phillips.  Plaintiffs contend that both Johnson and Phillips told Plaintiffs that they could

not give out the telephone number of SMART's human resource director because International

Paper promised SMART a workforce. (Objections, 2-3).  Assuming *arguendo* the statements

were made, which both Johnson and Phillips dispute, the allegation fails to establish Plaintiffs'

estoppel theory.  It is undisputed that Johnson advised employees that if they did not want a job

they should advise SMART during their interview or, if they had already gone though the

interview process, contact SMART directly. (Johnson Tr. 20-21).  Furthermore, providing

contact information for SMART's human resources director or advising employees about SMART's hiring process is simply not a violation or a misrepresentation of the EBA.

As set forth in International Paper's Motion for Summary Judgment, nothing prevented International Paper employees from informing SMART that they did not wish to go to work for SMART, and there were many ways that employees could <u>and did</u> communicate this preference to SMART.  (R&R, 13; Maheu Decl. ¶8; Weissman Tr. 28, 34-36, 38).  The "secret" telephone number, which was the cell phone number of SMART's human resources director Mary Rita Weissman, was "one of many ways that employees could communicate with SMART that they did not wish to receive a job offer." (R&R, 13). As the Magistrate noted, "employees had several obvious and known avenues by which to communicate their desire not to receive an offer from SMART." (R&R, 16).  Indeed, "if an employee did not wish to receive an offer from SMART they could tell their supervisor, write in on their application, tell their SMART interviewer, and/or tell Weissman directly."  (R&R, 13; Maheu Decl. ¶8; Weissman Tr. 28, 34-36, 38).

Furthermore, there was no preference at SMART for employees who communicated their desire for a job offer one way versus any other way.  In fact, "an employee's desire to get or not get an offer was only one factor considered by SMART."  <u>Id.</u>

The Magistrate also addressed Plaintiffs' claim that the "secret" telephone number was a critical component of Plaintiffs' case for estoppel. The Magistrate explained that Plaintiffs' allegations do not create a factual foundation on which to build an estoppel claim.  The Magistrate correctly noted that Plaintiffs failed to establish that International Paper misled or made any misrepresentations regarding the terms of the EBA, an essential element of an estoppel claim.  <u>See</u> <u>Armistead v. Vernitron Corp.</u>, 944 F.2d 1287, 1298 (6th Cir. 1991). The Magistrate stated that "the fact that [International Paper] provided certain employees with the cell phone number of Weissman, SMART's Human Resources Director, is not evidence of a

misrepresentation regarding the terms of the EBA." (R&R, 16). Because, *inter alia*, Plaintiffs failed to present any evidence that International Paper misrepresented the terms of the EBA to its employees, the Magistrate recommended that Plaintiffs' estoppel claims under bother the LMRA and ERISA be dismissed.

### 1.    *Plaintiffs' Objection No. 1*

In their first objection, Plaintiffs claim that the Magistrate improperly credited the disputed testimony of Tom Weiser in which Weiser stated that a phone number was given to him by a SMART interviewer. Plaintiffs claim that Weiser's testimony is disputed because of the testimony of Mary Rita Weissman stating that she did not know how people got her cell phone number. (Objections, 2).

First, Plaintiff's objection fails to demonstrate a dispute in the testimony between Tom Weiser and Mary Rita Weissman. The fact that Weiser testified that he obtained Mary Rita Weissman's telephone number from a SMART interviewer simply is not inconsistent with Weissman's testimony that she did not know how people got her cell phone number.

Second, where Weiser got the telephone number was immaterial to the Magistrate's recommendation in this case. The Magistrate's recommendation clearly states that the telephone number was "one of many ways that employees could communicate with SMART that they did not wish to receive a job offer." (R&R, 13). As the Magistrate noted, "if an employee did not wish to receive an offer from SMART they could tell their supervisor, write in on their application, tell their SMART interviewer, and/or tell Weissman directly." (R&R, 13; Maheu Aff ¶8; Weissman Tr. 28, 34-36, 38). Indeed, Weissman testified that employees could call her at the Hamiltonian Hotel, a number that was easily located in the Yellow Pages. (Weissman Tr. 19, 39). Thus, the means by which employees obtained the "secret number" is simply not

material because, as the Magistrate stated; "there remained a number of openly recognized ways by which employees could tell SMART they did not want the job offer." Id.

### 2.    *Plaintiff's Objection No. 2*

In their second objection, Plaintiffs claim that the Magistrate ignored the testimony of Union President, Tim Bray, regarding his discussions with International Paper Human Resources Manager, Annetta Johnson. Plaintiffs claim that Bray's testimony is a critical component of their case. Plaintiffs' argument is illogical and irrelevant. Bray's testimony simply provides his perspective of the "secret number" story and restates Plaintiffs' claim that the "secret number" is evidence of International Paper's preferential treatment of certain people. With regard to her conversation with Tim Bray, Annetta Johnson testified:

> A    As I recall, it was later in January, after we've gone through some of the -- gone through most, if not all, of the interviews. I got a call from Tim. And I don't recall the specifics of the conversation, but in general, he was wondering if there was -- either the truth about a phone number, is there a phone available, or is there a way for people who don't want job offers to make that known.
>
> Q    Okay. Do you recall what your response was?
>
> A    Exactly, no. Generally, my response was that employees were really only obligated to participate, fully cooperate in the interview process as stated in the effects bargaining agreement. If someone doesn't want a job, they should state so during a interview process. If they are – have completed the interview process and are rethinking their position, they had the ability to contact Smart Papers and let them know that. That I could not be the go-between around that. That they had to make direct contact with Smart Papers.
>
> Q    Is that because you had nothing to do with the hiring decisions made by Smart Papers?
>
> A    That's correct.

(Johnson Tr. 20-21). It is undisputed that utilizing the telephone number was merely one way in which employees could advise SMART that they did not want a job. (R&R, 13; Johnson Tr. 20-21). Thus, whether the union president viewed Weissman's cell phone number as "secret" and thought is was provided only to preferred employees is totally irrelevant to Plaintiffs' claim that International Paper misled them with respect to the EBA.

### 3.    *Plaintiff's Objection No. 3*

Plaintiffs contend that the Magistrate also ignored Hocutt Phillips' testimony related to the "secret number" and claim that this testimony demonstrates that International Paper provided a secret telephone number only to preferred employees. Plaintiffs contend that Phillips advised employees during a meeting he held, while a SMART employee, that he only provided the "secret number" to preferred employees because International Paper had promised SMART a workforce. Phillips actually testified that he had no knowledge of a "secret number" and that his only involvement in the application process was that he was required to fill out an application for employment with SMART. (Phillips Tr. 13-15).

Plaintiffs further contend that Phillips' alleged statement confirms that the number was kept secret by International Paper. Assuming all evidence in favor of Plaintiffs, Phillips' alleged statement regarding the "secret number" is nevertheless as immaterial as Bray's testimony discussed above. Even if the "secret number" existed and was, indeed, a "secret," it is undisputed that employees had several mechanisms by which to inform SMART that they did not want to be hired.

For the reasons set forth above, in International Paper's Motion for Summary Judgment, and in the Magistrate's Report and Recommendation, Plaintiffs Objections 1, 2 and 3 are without merit and Plaintiffs' claims must be dismissed.

B.    Plaintiff's Objection No. 4:  Plaintiffs Object To The Magistrates Finding That Plaintiffs Do Not Dispute That They Are Ineligible For Severance Under The Explicit Terms Of The EBA

The Magistrate correctly stated, "[u]nder the explicit terms of the EBA, Plaintiffs admittedly are not entitled to severance." (R&R, 16). Plaintiffs' disagreement with this conclusion is immaterial, as Plaintiffs' have offered no evidence whatsoever of any way in which they may be eligible for severance under the clear and unambiguous terms of the EBA. Plaintiffs' bald assertion that the EBA is ambiguous is without merit.

First, Plaintiffs have presented no evidence that they are actually entitled to severance under the explicit terms of the EBA.   Under the EBA, the only employees entitled to severance were those who were not offered jobs with SMART and those who were offered and accepted jobs with SMART but were subsequently terminated through no fault of their own. (R&R, 7; Payton Tr. 29, Union Representative Tr. 17, Ex. 9; Bray Tr. 28, 35).   Plaintiffs have presented no evidence that they fit into either of these categories.    Notwithstanding the claims in their Objections, Plaintiffs have conceded that International Paper paid severance benefits to each employee entitled to benefits pursuant to the eligibility criteria defined in the EBA.  (Bray Dep. at 35; Plaintiffs' Memorandum Contra Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, November 14, 2001, page 12).[1]

Instead of offering evidence that they are entitled to severance under the explicit terms of the EBA, which they cannot, Plaintiffs contend that SMART improperly labeled some employees "terminated through no fault of their own" so that they would be entitled to severance.   Plaintiffs have not presented and cannot present any evidence that Plaintiffs were

---

[1] In Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986), the court noted that summary judgment would be greatly diminished as a mechanism for screening out frivolous issues of fact if a party could create a factual dispute simply by presenting an affidavit contradicting his prior testimony. Here, Plaintiffs do not even present testimony to dispute Plaintiffs' concession that International Paper paid severance according to the terms of the EBA.  (Bray Dep. at 35; Plaintiffs' Memorandum Contra Defendant's Motion to Dismiss, November 14, 2001, 12).

terminated through no fault of their own or that they are entitled to severance under any term contained in the EBA. Plaintiffs' line of reasoning is not pertinent to an inquiry of whether Plaintiffs were eligible for severance under the explicit terms of the EBA.

Furthermore, with regard to Plaintiffs' argument that employees were given severance after allegedly being improperly identified by SMART as terminated "through no fault of their own," the Magistrate correctly concluded that International Paper "was not involved in SMART's post-sale termination process." (R&R, 6; Weissman Tr. 28, 47). Plaintiffs offer no evidence that International Paper had any knowledge or involvement in SMART's decisions to classify certain employees as having been terminated for "no fault of their own."

Plaintiffs' Objection No. 4 is meritless and Plaintiffs' claims should be dismissed.

C.     Plaintiff's Objection No. 5:  Plaintiffs Contend that the Magistrate Ignores Plaintiffs' Argument That SMART's Human Resources Managers Acted As Agents of International Paper

In Objection No. 5 Plaintiffs argue that the Magistrate ignored Plaintiffs' contention that SMART's human resources administrators were agents of International Paper in that they reported who was eligible for severance pay and who was not. This objection is without merit.

First, who was eligible for severance is governed by the clear and unambiguous terms of the EBA. In the EBA, International Paper and PACE agreed that employees would be required to apply for employment with SMART in order to be eligible for severance. Then, in accordance with the Asset Purchase Agreement, SMART was required to advise International Paper of the results of those applications. (R&R, 6; Weissman Tr. Ex. 15). On March 6, 2001, SMART provided International Paper with nine lists containing those results. (R&R, 6; Weissman Tr. Ex. 15; Maheu Aff. 16). International Paper's Manager of Divestitures and Closures, George

Payton, then determined that those employees on lists 7 and 8[2] were entitled to severance under the terms of the EBA and he paid those employees. (R&R, p. 6; Payton Tr. 29). It is undisputed that SMART had no involvement in determining who would receive severance. (Weissman Tr. 59; Johnson Tr. 25-26; Phillips Tr. 17; Maheu Tr. 10, 14). All severance determinations were made by George Payton in accordance with the clear and unambiguous terms of the EBA. (R&R, 6; Payton Tr. 29). SMART decided which employees it would hire, which employees it would fire and made those decisions for their own reasons and their own benefits, not for the benefit of International Paper. (Weissman Tr. 28, 47). Plaintiffs have provided no evidence that SMART's employees were agents of International Paper for purposes of severance determinations.[3]

Moreover, "[a]n employer is not liable for independent acts that in no way facilitate or promote the employer's business." Anderson v. Toeppe, 688 N.E.2d 538 (Oh. Ct. App. 1996). By rescinding the offers and by terminating employees for no fault of their own, SMART was not acting in the interest of International Paper. To the contrary, SMART's actions were causing International Paper to bear the expense of paying severance to those employees. There is no evidence that this action was taken at the behest of or in the interest of International Paper.

Plaintiffs' Objection No. 5 is without merit and Plaintiffs' claims must be dismissed.

D.    Plaintiff's Objection No. 6:  Plaintiffs Object To The Magistrates Finding That Plaintiffs Failed To Produce Evidence That International Paper's Communications Regarding The EBA Were Misleading Or Inconsistent

Plaintiffs contend that the Magistrate incorrectly stated that Plaintiffs failed to produce evidence that International Paper's communications regarding the EBA were misleading or

---

[2] Lists 7 and 8 included "IP Hourly Employees Without Job Offers From SMART Papers" and "IP Hourly Employees Offered and Accepted Jobs With SMART Papers But Who Were Subsequently Terminated (Without Fault of Employees)" respectively.
[3] Nevertheless, assuming *arguendo* the SMART employees were agents of International Paper when they deemed certain employees "terminated through no fault of their own," it does not establish a breach of the EBA. International Paper paid employees in accordance with the terms of the EBA and Plaintiffs were not entitled to severance benefits under any reading of its terms.

inconsistent.  Plaintiffs support this objection by claiming that they have presented evidence that International Paper's managers aided a few employees to receive severance pay by giving out the "secret number."   Plaintiffs claim the "secret number" was a "virtual assurance of receiving severance pay."

As set forth above, the Magistrate addressed this issue directly.  The Magistrate stated "the fact that Defendant provided certain employees with the cell phone number of Weissman, SMART's Human Resource's director, is not evidence of a misrepresentation regarding the terms of the EBA." (R&R, 16).  Indeed, providing the telephone number for Smart Paper's Human Resources Manager is in no way related to the question of whether International Paper's communications regarding the EBA were misleading or inconsistent.

Plaintiffs are claiming that International Paper paid severance to "preferred employees" who are not entitled to severance under the clear and unambiguous terms of the EBA.  Plaintiffs argue that because International Paper paid severance to these preferred employees, International Paper is estopped from denying severance to Plaintiffs. The remedy sought by Plaintiffs would vitiate the EBA and would change it from an agreement to provide benefits only to employees who <u>were not offered jobs</u> at SMART (or lost jobs with SMART through no fault of their own) to one that provides benefits to employees who <u>were offered jobs</u> at SMART.  In other words, the Union seeks to alter the clear and unambiguous terms of the EBA and create terms that are diametrically opposed to the agreement reached between International Paper and the Union. This is contrary to the doctrine of equitable estoppel. <u>See</u> <u>Swinney v. General Motors Corp.</u>, 46 F.3d 512, 522-23 (6th Cir. 1995) (Court rejected equitable estoppel claim where there was no connection between the employer's alleged misrepresentation and the remedy sought.)

Plaintiffs have presented no evidence that International Paper misled employees or made any misrepresentations regarding the terms of the EBA, and therefore Plaintiffs' Objection No. 6 is without merit and Plaintiffs' claims under the LMRA should be dismissed.

  E.  <u>Plaintiff's Objection No. 7: Plaintiffs Object to the Magistrate's Conclusion That International Paper is Entitled to Judgment As A Matter of Law On Plaintiffs' Claim For Breach of Contract Under the LMRA</u>

Plaintiffs do not even attempt to provide support for their bold assertion in Objection No. 7 that International Paper is not entitled to judgment as a matter of law under the LMRA. Even if they had, Objection No. 7 is wholly without merit.

As set forth in International Paper's Motion for Summary Judgment, only those employees who "did not receive an employment offer from SMART" or who did receive an offer from Smart Papers but are "terminated from Smart Papers through no fault of their own within eighteen months of the sale date" are entitled to severance under the EBA. (R&R, 8; Payton Tr. 29). Plaintiffs have presented no evidence that they fit into either of these categories. Even if Plaintiffs' allegations regarding the "secret number" are true (and the undisputed competent evidence is that this allegation is <u>not</u> true), nothing in the EBA prevented or prohibited International Paper from sharing the telephone number of the successor company's Director of Human Resources with an employee. Moreover, the representation in the EBA that if an employee does not receive an offer from SMART he or she will receive severance payments, is demonstrably and indisputably true. Plaintiffs concede that they were never told they would get severance benefits if they were offered a job or failed to complete the application process. (Bray Tr. 28, 35; Union Representative Tr. Ex. 9; Union Representative Tr. 17). Plaintiffs, therefore, cannot state a claim for equitable estoppel. <u>See</u> <u>Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.</u>, 226 F.3d 903, 914-15 (7th Cir. 2000)(rejecting a party's estoppel argument because the party's reliance on any misrepresentation made by the trust fund could not

have been reasonable). It is on this basis that the Magistrate determined that International Paper is entitled to judgment as a matter of law as to Plaintiffs' claims for breach of the EBA under the LMRA.

As set forth in more detail in International Paper's Response to Plaintiffs' Objection No. 10, the Magistrate further held that International Paper is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim under the LMRA because Plaintiffs failed to exhaust their contractual remedies under the EBA prior to filing the complaint in this matter. (R&R 8, n.2). The Magistrate agreed with the analysis undertaken by Judge Beckwith in <u>Angel v. United Paperworkers International Union Local 1967</u>, 2003 Lexis 3668 (S.D. Ohio 2003). In that case, the court, interpreting the same EBA, determined that the EBA was an amendment to the Collective Bargaining Agreement ("CBA") agreed to by the parties. The Magistrate further agreed that to vindicate rights that arise under the agreement, Plaintiffs were required to exhaust the grievance procedures provided by the CBA. (R&R, 8 n.2; <u>see also</u> § H *infra*).

Plaintiffs' Objection No. 7 is without merit and Plaintiffs' claims should be dismissed.

F.     <u>Plaintiff's Objection No. 8: Plaintiffs Contend That The Magistrate Improperly Concluded that Plaintiffs Failed to Establish That International Paper Breached A Fiduciary Duty to Administer the EBA Fairly and without Discrimination</u>

Plaintiffs' Objection No. 8 contends that the Magistrate incorrectly found that Plaintiffs had not established that International Paper violated its fiduciary duty to administer the EBA fairly and without discrimination.[4]     Specifically, Plaintiffs disagree with the Magistrate's determination that a party cannot seek to estop the application of an unambiguous written provision of an ERISA plan.[5] In so doing they disagree with the law of this Circuit. Because

---

[4] International Paper has separately filed objections to the Magistrate's finding that ERISA applies to the EBA.
[5] Plaintiffs also restate their claim that the Magistrate erred by holding that Plaintiffs' assertions are factually inaccurate and unsupported by the evidence and by holding that the Plaintiffs failed to produce any evidence that International Paper's communications regarding the EBA were misleading. International Paper addressed these arguments in their response to Objection Nos. 1 and 6 respectively.

Plaintiffs cannot challenge the Magistrate's well-reasoned determination with admissible evidence or even a lucid argument, Plaintiffs ask the Court to "sense these sorry things by their smell." (Objections, 8).   Plaintiffs' requested standard is clearly contrary to the standard established in Federal Rule of Civil Procedure 56.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Plaintiffs claim that the doctrine of equitable estoppel entitles Plaintiffs, each of whom were offered jobs by SMART, to severance benefits under the EBA, even though the clear and unambiguous terms of the EBA provide that employees are not entitled to the EBA severance benefits if they were offered jobs by SMART.  As the Magistrate stated, a party cannot seek to estop the application of an unambiguous written provision of an ERISA plan. (R&R, 14, citing Marks v. Newcourt Credit Group, Inc., 342 F.3d 444 (6th Cir. 2003)).

In Marks, the plaintiff made a claim for severance benefits under an ERISA-governed plan.  Under the plan, any claim for benefits for suffering a qualifying termination had to be made by October 1, 1998.  Plaintiff admitted that he had not made a claim by October 1, 1998, but alleged that he had been constructively discharged prior to October 1, 1998.  Plaintiff alleged that the reason he had had not filed for benefits by the deadline was because the defendant had fraudulently represented to him that his job duties were not being reduced, lulling him into not exercising his rights under the plan.  The plaintiff argued that the defendant should be estopped from relying on the plan's October 1, 1998 deadline.

While the Court agreed that the plaintiff's allegations could establish a *prima facie* case of equitable estoppel, the Court held that the plaintiff could not rely on an estoppel theory to claim severance benefits under the plan.  The Court reasoned that "[w]hen a party seeks to estop the application of an unambiguous plan provision, he by necessity argues that he reasonably and justifiably relied on a representation that was inconsistent with the clear terms of the plan."

<u>Marks</u>, 342 F.3d at 456, citing <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 403 (6th Cir. 1998). The Court further stated "that to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves." <u>Id.</u> As with the severance plan in <u>Marks</u>, the terms for qualifying for severance benefits under the EBA are clear and unambiguous.

Plaintiffs argue that the terms of the EBA are ambiguous because International Paper improperly paid severance to employees that were not "terminated through no fault of their own." (Objections, p. 6). Plaintiffs then provide examples of employees who Plaintiffs claim were improperly deemed "terminated through no fault of their own" by SMART. However, these payments do not demonstrate ambiguity in the terms of the EBA. International Paper clearly paid employees who it deemed, rightly or wrongly, were entitled to the benefits because it was informed by SMART that they were terminated through no fault of their own. (R&R, p. 6; Payton Tr. 29).

Moreover, Plaintiffs offer no evidence to contradict the testimony of Milt Lewis, Dan Maheu and Annetta Johnson that International Paper had involvement in or knowledge of SMART's decision to rescind certain offers or terminate certain employees whose jobs were eliminated after the sale on February 9, 2001. (Lewis Dep. at 41-42; Maheu Decl.15.) Furthermore, there is no evidence that International Paper had any knowledge or involvement in SMART's decisions to classify employees as having been terminated for "no fault of their own."

The EBA clearly states that employees who are "terminated through no fault of their own" are entitled to severance and Plaintiffs have presented no evidence that the EBA is in any manner ambiguous on that point or that International Paper failed to provide severance to those persons entitled to it under the clear and unambiguous terms of the EBA. Indeed, Plaintiffs are seeking severance benefits in contravention of the clear and unambiguous terms of the EBA,

G.    <u>Plaintiff's Objection No. 9:  The EBA is Ambiguous</u>

Plaintiffs' Objection No. 9 restates the claim Plaintiff made in their Objection No. 8 that the EBA is ambiguous.  For the reasons set forth in §F *supra*, Plaintiffs Objection No. 9 is wholly without merit and Plaintiffs claims under ERISA and the LMRA should be dismissed.

H.    <u>Plaintiff's Objection No. 10:  Plaintiffs Contend That The Magistrate Incorrectly Determined That the EBA is An Amendment to the Collective Bargaining Agreement And that Plaintiffs Failed To Exhaust Their Administrative Remedies</u>

In Objection No. 10, Plaintiffs contend that the Magistrate incorrectly held that Plaintiffs failed to exhaust their administrative remedies prior to filing this action.  Plaintiffs argue that the EBA is not part of the parties' CBA and, therefore, Plaintiffs were not required to utilize the grievance procedures contained in the CBA.  Plaintiffs support this argument by stating it is contrary to the Court's decision on International Paper's Motion to Dismiss.

First, this Court did not have the benefit of discovery when it initially ruled on International Paper's Motion to Dismiss.  Since the Court's ruling, the parties have engaged in extensive discovery and the evidence produced during discovery clearly demonstrates that Plaintiffs failed to properly exhaust their administrative remedies prior to filing this lawsuit.

As set forth in International Paper's Motion for Summary Judgment, the EBA is an amendment to the CBA. <u>Angel v. United Paperworkers Int'l Union Local 1967</u>, 2003 U.S. Dist. LEXIS 3668 (S.D. Ohio 2003) (In interpreting this same set of agreements, the Court determined that the EBA is an amendment to the CBA and that in order to vindicate rights that arise under that agreement, the plaintiff was required to exhaust the grievance procedures provided by the CBA); see also <u>Terwilliger v. Greyhound Lines, Inc.</u>, 882 F.2d 1033, 1038-39 (6th Cir. 1989). The undisputed evidence produced during discovery establishes that the CBA was originally executed on September 18, 1990.   The CBA included, among other things, a grievance and arbitration procedure. (Union Representative Tr., Ex. 5, §8).  The CBA remained in effect "from

September 18, 1990 through September 17, 1995, and from year to year thereafter, unless terminated in accordance with the provisions" outlined in the Agreement. (Union Representative Tr., Ex. 5, §35). While there have been several amendments and mid-contract agreements between PACE and both Champion and International Paper, it is undisputed that these amendments and mid-contract agreements did not affect the severance provisions or the grievance and arbitration provisions of the initial CBA. (Union Representative, Tr. 17-20).

PACE Union President Tim Bray admitted during his deposition that the EBA did not void the CBA, nor was the CBA ever terminated by either party. (Union Representative Tr. 17, 18). Additionally, the Union's chief spokesman at the negotiation of the EBA, Ken Stanifer, agreed that filing a grievance would be an appropriate recourse for a violation of the EBA:

Q:    If an employee thought he was entitled to the severance, what would his recourse be if he didn't receive it?

A:    If he didn't receive his pay under those conditions, he would bring it to the attention of the union and, of course, we would call Tom Stewart.

Q:    Would a grievance be filed?

A:    I guess it could be, but I don't know of any that were filed under those conditions.

(Stanifer Tr. 25). The grievance and arbitration provisions of the CBA clearly apply to the EBA.

Where the plaintiffs in a Section 301 action fail to exhaust all administrative remedies available in the contract, their claims must be dismissed. See Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 163 (1983); see also Anderson v. Ideal Basic Industries, 804 F.2d 950 (6th Cir. 1986) (dismissal upheld where employees failed to exhaust administrative remedies); See Adkins v. Times-World Corp., 771 F.2d 829 (4th Cir. 1985) (held

that dispute arising from violation of addendum is subject to grievance and arbitration provisions of collective bargaining agreement and court is without authority to entertain § 301 action).[6]

It is undisputed that Plaintiffs have not exhausted the contractual administrative remedies provided for in the CBA with respect to the matter before this Court. (Union Representative Tr. 20; Stanifer Tr. 25). Thus, Plaintiffs' objection is unfounded and Plaintiff's claims must be dismissed for failure to exhaust contractual administrative remedies.

I.      Plaintiff's Objection No. 11:  Plaintiffs Contend That The Magistrate Improperly Determined That Plaintiffs Assert A Claim of Direct Dealing, A Claim under the Exclusive Jurisdiction of the NLRB

Plaintiffs' Objection No. 11 contends that the Magistrate improperly determined that the Plaintiffs' claim of breach of contract under the LMRA is actually a claim of direct dealing, a claim which is under the exclusive jurisdiction of the NLRB. This Objection is without merit.

Plaintiffs allege that International Paper breached the EBA by secretly agreeing with or counseling "preferred employees" to advise SMART that they did not want employment with SMART, thereby "circumventing the provision for denial of severance pay to those receiving offers of employment by SMART." This is actually a claim that International Paper dealt directly with certain favored employees represented by PACE to give them a benefit to which they had no right under the express provisions of the EBA. See Angel 2003 U.S. Dist. LEXIS 3668 (S.D. Ohio 2003)(In reviewing the same allegations at issue in the instant matter, the Court determined that the plaintiffs' claims of preferential treatment were actually claims of direct dealing and were thus preempted by the NLRA). As set forth in Angel, "it is important to note here that Plaintiffs do not allege that International Paper did not comply with the [EBA] with respect to their severance rights, only that International Paper did not follow the procedures in

---

[6] Plaintiffs cite Heheman v. E.W. Scripps Co., 661 F.2d 1115, 1124 (6th Cir. 1981) in support of their argument that Plaintiffs are not required to exhaust their administrative remedies; however, Heheman is not relevant to the issues presented in the instant matter. In Heheman, the Sixth Circuit addressed the question whether specific performance of a collective bargaining agreement is a remedy available to employees, an issue not present in the instant matter.

the [EBA] when deciding to pay severance to other employees." Id. Therefore, Plaintiffs' allegations are actually a claim of direct dealing instead of a claim that International Paper breached the EBA.

Plaintiffs argue Smith v. Evening News Assn., 371 U.S. 195 (1962) negates the National Labor Relations Board's exclusive jurisdiction in this case. Smith holds that the Board's jurisdiction is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301 where a breach of contract may also be an unfair labor practice. Id. at 197. Smith is inapposite, however, as Plaintiffs do not claim that International Paper actually breached the EBA, but instead, that International Paper conspired with SMART and improperly advised employees how to avoid the strictures of the EBA. This is not an allegation that International Paper violated the terms of a contract, but an allegation that International Paper engaged in improper direct dealing with its employees – an unfair labor practice under the exclusive jurisdiction of the NLRB. See 29 U.S.C. § 158(a)(5).

Direct dealing or direct bargaining with an employee who is covered by a collective bargaining agreement is an unfair labor practice under the National Labor Relations Act. J.I. Case Co. v. NLRB, 321 U.S. 332 (1944); 29 U.S.C. § 158(a)(5). The National Labor Relations Board has exclusive jurisdiction over claims for unfair labor practices; thus, a claim for an unfair labor practice cannot be a basis for a hybrid § 301 claim. Martin v. Lake County Sewer Co., Inc., 269 F.3d 673, 680 (6th Cir. 2001).

Plaintiffs' claim that International Paper counseled preferred employees on methods to obtain severance pay is, at most, a claim that International Paper violated Section 8(a)(5) of the National Labor Relations Act, which states that that it is an unfair labor practice for an employer to: "refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Violations of Section 8(a)(5) are within the exclusive jurisdiction of the National

Labor Relations Board.  See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959); Kingsport Publishing Corp. v. National Labor Relations Board, 399 F.2d 660, 661-662 (6th Cir. 1968).  The Magistrate noted, "Plaintiffs have not, in other words, pled in this count facts which show a violation which is also remedial under Section 301.  Plaintiffs have simply attempted to plead around the exclusive jurisdiction of the NLRB."  (See R&R, 16, quoting Angel 2003 Lexis 3668 at *38).  Plaintiffs' avenue for redress, if any, is with the National Labor Relations Board, not with this Court. Thus Plaintiffs' objection is without merit and Plaintiffs' contract claims must be dismissed.

> J.   Plaintiff's Objection No. 12:  Plaintiffs Contend That The Magistrate Improperly Concludes That International Paper is Entitled to Judgment As A Matter of Law On Plaintiffs' Claim For Breach of Contract Under the LMRA and Breach of Fiduciary Duty Under ERISA Because Plaintiffs May Not Invoke the Doctrine of Equitable Estoppel In This Case

Plaintiffs' Objection No. 12 is simply a restatement and summary of Plaintiffs' earlier objections to the Magistrate's recommendation that Plaintiffs' claims be dismissed.  For the reasons set forth above and in International Paper's Motion for Summary Judgment, Plaintiffs objections are without merit and Plaintiffs' claims under the LMRA and ERISA must be dismissed because the undisputed facts do not support Plaintiffs' contentions.

Plaintiffs restate their claim that International Paper should be estopped from enforcing the provisions of the EBA.  However, as the Magistrate aptly noted, "plaintiffs use of case law without a factual foundation is not sufficient to withstand a motion for summary judgment." (R&R, 15).  The Magistrate explained that Plaintiffs' allegations do not create a factual foundation on which to build an estoppel claim.  Plaintiffs failed to establish that International Paper misled or made any misrepresentations regarding the terms of the EBA, an essential element of an estoppel claim.  See Armistead v. Vernitron Corp., 944 F.2d 1287, 1298 (6th Cir. 1991).  As the Magistrate stated, "the fact that [International Paper] provided certain employees

with the cell phone number of Weissman, SMART's Human Resources Director, is not evidence of a misrepresentation regarding the terms of the EBA." (R&R, 16).

Moreover, even if a few ineligible employees were paid severance to which they were not entitled under the EBA, this does not constitute a basis for estoppel or mean that all other ineligible employees are entitled to severance. Plaintiffs cannot establish the necessary elements of estoppel under the law in the Sixth Circuit. See TMW Mfg. Co., Inc. v. Dura Corp., 592 F.2d 346, 350 (6th Cir. 1979); Trustees of the Mich. Laborers' Healthcare Fund v. Gibbons, 209 F.3d 587, 591 (6th Cir. 2000); Adcox v. Teledyne, Inc., 21 F.3d 1381 (6th Cir. 1994). Plaintiffs' assertion that International Paper showed preferential treatment to some employees is insufficient to establish a claim of equitable estoppel. Plaintiffs have failed to establish that International Paper misled or made any misrepresentations regarding the terms of the EBA, essential elements of Plaintiffs' claims of equitable estoppel.

Plaintiffs' Objection No. 12 is without merit and Plaintiffs' claims under the LMRA and ERISA must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, International Paper submits that Plaintiffs' objections to the R & R are without merit. International Paper therefore respectfully requests that this Court accept and approve the Report and Recommendation as set forth above, that the Court grant International Paper's Motion for Summary Judgment, and that the Plaintiffs' claim of under the LMRA and ERISA be dismissed with prejudice.

Respectfully submitted,

INTERNATIONAL PAPER COMPANY


/s/ Michael A. Roberts 0047129
      by Lee P. Geiger (0072489)
Counsel

Michael Roberts, Esq.                    W. Carter Younger, Esq. (admitted *pro hac vice*)
Graydon Head & Ritchey, LLP              Vincent J. Miraglia, Esq. (admitted *pro hac vice*)
1900 5th 3rd Center                      McGuireWoods LLP
511 Walnut Street                        1050 Connecticut Avenue
Cincinnati, Ohio 45202                   Washington, DC 20036
(513) 629-2799                           (202) 857-1704


### CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2004, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, and I hereby certify that I have mailed a copy first class, postage prepaid to:

> Robert I. Doggett
> 6740 Clough Pike
> Cincinnati, OH  45244

/s/ Michael A. Roberts (by Lee P. Geiger (0072489)

\\LAB\489025.1